UNITED STATES of America

v.

Raphael LEVY.

Case No. 11–20290–CR.

United States District Court,
S.D. Florida.
Miami Division.

March 13, 2012.

Eric A. Hernandez, AUSA, United States Attorney's Office, Miami, for Plaintiff.

Joaquin G. Perez, Esq., Miami, for Defendant.

ORDER DENYING MR. LEVY'S MOTIONS
TO DISMISS THE INDICTMENT

ADALBERTO JORDAN, District Judge.

Raphael Levy has filed several *pro se* "commercial notices" [D.E. 42, 43,

44, 48] and motions [D.E. 73, 75, 77] seeking to dismiss the indictment.[1] Following oral argument, and for the reasons which follow, Mr. Levy's notices and motions are DENIED.[2]

## I. BACKGROUND

A grand jury has charged that Mr. Levy violated 18 U.S.C. §§ 514(a)(1) and (2) by producing and passing fictitious financial instruments, purporting to be issued under the authority of the United States, with the intent to defraud. The indictment alleges that between July and November of 2009 Mr. Levy created five separate money orders, appearing to be issued on behalf of the United States, and sent them to various private and public entities.

Although his filings contain many different contentions, at oral argument Mr. Levy confirmed that he only seeks to dismiss the indictment on two grounds. As a result, I address only these two arguments. The first is that 18 U.S.C. § 3231, the statute that grants district courts jurisdiction over federal criminal cases, was enacted in contravention of Article 1, § 5, of the Constitution. The second is that because the United States is required to pay his debts, Mr. Levy cannot be prosecuted for creating the money orders at issue. This second argument is generally referred to as the "redemption theory."

## II. ANALYSIS

### A. TITLE 18 OF THE UNITED STATES CODE [3]

■ Mr. Levy asserts that Public Law 80–772, which became Title 18 of the United States Code (including § 3231), was enacted in violation of the Constitution. For starters, Mr. Levy contends that the Quorum Clause of the Constitution was violated when the House of Representatives voted on May 12, 1947, to pass H.R. 3190, which later became Public Law 80–772. Mr. Levy also asserts that the Quorum Clause was violated a second time when the Speaker of the House and the President pro tempore of the Senate signed Public Law 80–772 on June 23, 1948, four days after Congress adjourned.

■ Under settled precedent, Mr. Levy has the burden of proving that 18 U.S.C. § 3231 was not constitutionally enacted. *See, e.g., I.N.S. v. Chadha,* 462 U.S. 919, 944, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) ("We begin...with the presumption that the challenged statute is valid."); *Benning v. Georgia,* 391 F.3d 1299, 1303 (11th Cir. 2004) (the party challenging an act of Congress has the "burden to show that [it] is unconstitutional"); *Wells v. Attorney General of the United States,* 201 F.2d 556, 560 (10th Cir.1953) ("[I]n the enactment of a statute Congress is presumed to act with knowledge of controlling constitutional lim-

---

1. Mr. Levy styled some his filings as motions for judgment on the pleadings. *See* FED. R. CIV. P. 12(c). Because "the Federal Rules of Civil Procedure only [apply] to civil, not criminal, proceedings," *United States v. Guerra,* 426 Fed.Appx. 694, 697 (11th Cir.2011), I construe these filings as motions to dismiss the indictment under Federal Rule of Criminal Procedure 12.

2. Where a criminal defendant is represented by counsel, courts may limit *pro se* filings. *See, e.g., United States v. Long,* 597 F.3d 720, 729 (5th Cir.2010). In the exercise of my

discretion, I will consider the arguments in Mr. Levy's filings on the merits. *Cf.* Local Rule 11.1(d)(4) ("Whenever a party has appeared by attorney, the party cannot thereafter appear or act on [his] own behalf ... provided, that the Court may in its discretion hear a party in open court, notwithstanding the fact that the party has appeared or is represented by an attorney.").

3. Copies of the documents that Mr. Levy filed in support of his arguments, as well as copies of the legislative records discussed in this order, are attached as exhibits.

itations or proscriptions and with an intent and purpose to avoid their contravention."). As explained below, he has not carried that burden.

In support of his attack on § 3231, Mr. Levy submits several documents which he says support his argument that § 3231 was enacted in contravention of the Constitution. These documents include letters, an email, and an affidavit that discuss the enactment and legislative history of H.R. 3190. In one such letter, dated September 11, 2006, Karen L. Haas, Clerk of the U.S. House of Representatives, states that she was unable to find any evidence of a vote on May 12, 1947, on H.R. 3190 in the Journal of the House of Representatives and that the Congressional Record indicates that a quorum was not present when the House voted to amend H.R. 3190. There is also an email from Harley G. Lappin, Director of the Federal Bureau of Prisons, to the Bureau's department heads, dated July 27, 2009. In that email, Mr. Lappin states, among other things, that there is no record of a quorum being present in the House on May 12, 1947. The remaining documents are a letter from Jeff Trandahl, Clerk of the U.S. House of Representatives, to a Charles R. Degan, dated June 28, 2000 (stating that, although Congress was in session on June 1, 3, 4, 7–12, and 14–19, 1948, Title 18 was not voted on those days); a letter from Nancy Erikson, Secretary of the Senate, to a Wayne E. Matthews, dated March 9, 2009 (stating that no action was taken by the Senate on H.R. 3190 prior to the December 10, 1947, *sine die* adjournment); a letter from the Office of the Clerk of the U.S. House of Representatives, dated August 24, 2010 (stating that H.R. 3190 was passed by the House and Senate on June 18, 1948, and became Public Law 80–772 on June 25, 1948); and an undated affidavit from a Tony Robert Davis, who works for a law firm in Texas (stating that the House library had confirmed that the in-

formation in Mr. Trandahl's letter was correct). Notwithstanding these documents, and contrary to Mr. Levy's contentions, § 3231 is valid.

#### 1. THE ENROLLED BILL RULE

The first problem for Mr. Levy is the Supreme Court's decision over a century ago in *Marshall Field & Co. v. Clark*, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294 (1892). In that case, the Supreme Court, rejecting an attempt to show through evidence that a bill which passed both Houses of Congress was not the bill actually voted on (because it allegedly omitted a particular section contained in the bill), explained that the "signing by the speaker of the house of representatives, and by the president of the senate, in open session, of an enrolled bill, is an official attestation by the two houses of such bill as one that has passed congress." *Id.* at 672, 12 S.Ct. 495. *See also id.* at 680, 12 S.Ct. 495 ("We are of the opinion ... that it is not competent for the appellants to show, from the journals of either house, from the reports of committees, or from other documents printed by authority of Congress, that the enrolled bill, designated 'H.R. 9416,' as finally passed, contained a section that does not appear in the enrolled act in the custody of the state department.").

Though *Marshall Field* dealt with a law signed in open session, some federal courts have relied on its reasoning to reject the type of attack made by Mr. Levy here. *See, e.g., United States v. Farmer*, 583 F.3d 131, 152 (2d Cir.2009) ("We agree with the government that the enrolled bill rule [from *Marshall Field*] precludes Farmer's challenge to the validity of the Act of June 25, 1948, and we hold that the district court properly exercised jurisdiction pursuant to 18 U.S.C. § 3231."); *United States v. Miles*, 244 Fed.Appx. 31, 33 (7th Cir.2007) (relying on enrolled bill rule to reject challenge to validity of

§ 3231). Finding these cases persuasive, I do the same.[4]

## 2. THE LEGISLATIVE RECORD

Even if Mr. Levy's extrinsic evidence could be considered, the challenge to § 3231 would nonetheless fail. Mr. Levy argues that the Quorum Clause was violated on May 12, 1947, because the House voted to pass H.R. 3190 by a vote of 38 to 6. But the Congressional Record of the 80th Congress, 1st Session, does not indicate that H.R. 3190 was voted on by 44 Members of the House. Instead, the Congressional Record merely states that before the vote on the bill itself, the House voted 38 to 6 to include an amendment to the language of H.R. 3190. After the vote on the amendment, the record reflects that the bill was ordered to be engrossed, read for a third time, and passed. *See* 93 CONG. REC. 5049 (1947). Although the Congressional Record does not expressly state that a quorum was present when the House voted to pass H.R. 3190 or the final tally, it is clear that the 38 to 6 vote referenced by Mr. Levy was not the final House vote on the bill.

More importantly, the Journal of the House of Representatives, the official record of the House, *see* 4 A. HINDS, PRECEDENTS OF THE HOUSE OF REPRESENTATIVES § 2727 (1907), indicates that a quorum was present when H.R. 3190 was passed on May 12, 1947. The Journal explicitly states that 297 Members were present on May 12, 1947, and that number constituted a quorum. *See* H. JOURNAL, 80th Cong., 1st Sess. 341(1947). The Journal also confirms that H.R. 3190 was read and passed by the House:

> The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill. *Id.* at 343–44. Thus, the Journal of the House of Representatives establishes that a quorum was present on May 12, 1947, when the House voted to pass H.R. 3190. *Cf. United States v. Ballin,* 144 U.S. 1, 4, 12 S.Ct. 507, 36 L.Ed. 321 (1892) (if reference to the Journal of the House of Representatives can be made to determine whether a law was properly enacted, the Journal "must be assumed to speak the truth").

Mr. Levy also asserts that the Quorum Clause was violated when the Speaker of the House and the President pro tempore of the Senate signed Public Law 80–772 on July 23, 1948, four days after Congress had adjourned *sine die.* This argument too lacks merit. First, Mr. Levy provides no legal support for the proposition that a bill properly passed by both Houses of Congress must be signed in open session with a quorum present. Second, contrary to any contention that Public Law 80–772 was signed without the proper authority of Congress, the House Journal indicates that the Speaker of the House and the President pro tempore of the Senate were authorized to sign enrolled bills after the congressional adjournment pursuant to House Concurrent Resolution 219. *See* H. JOURNAL, 80th Cong., 2d Sess. 771 (1948) ("*Resolved,* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled."). *See also* S. JOURNAL, 80th Cong., 2d Sess. 578–79 (1948) (stating that

---

4. For a good discussion of why *Marshall Field* remains good law today, see *Public Citizen v. Clerk, U.S. District Court,* 451 F.Supp.2d 109, 118–25 (D.D.C.2006), *aff'd,* 486 F.3d 1342, 1350–55 (D.C.Cir.2007).

the President pro tempore of the Senate, pursuant to the authority of House Concurrent Resolution 219, signed H.R. 3190 after the adjournment of the Senate on June 20, 1948). In sum, § 3231 is valid. *See Wolford v. United States,* 362 Fed. Appx. 231, 232 (3d Cir.2010) ("Section 3231 was properly enacted and is binding. The 1948 amendment to that statute, Public Law 80–772, passed both houses of Congress and was signed into law by President Truman[.]").

Finally, I note that arguments identical or similar to those made by Mr. Levy have been squarely rejected by all the federal courts to have considered them. *See, e.g., United States v. Campbell,* 221 Fed.Appx. 459, 461 (7th Cir.2007) (rejecting argument that § 3231 is void because the House and Senate did not vote on it during the same session of Congress); *United States v. Collins,* 510 F.3d 697, 698 (7th Cir.2007) (describing attack on constitutionality of the enaction of Title 18 as "unbelievably frivolous"); *United States v. Potts,* 251 Fed. Appx. 109, 111 (3d Cir.2007) (denying motion to void a criminal judgment and holding that the defendant's contention that the 1948 amendment to § 3231 was not passed by both houses of Congress was "frivolous"); *Rhodes v. United States,* No. 4:06–CR–00218, 2011 WL 2693571, at *1 (E.D.Ark. Jul. 12, 2011) (rejecting claim that a quorum was not present when the House voted on Public Law 80–772); *Turner v. United States,* No. 11–0327–WS–C, 2011 WL 5595939, at *5–6 (S.D.Ala. Sep. 8, 2011) (denying challenge to the jurisdiction of the court on the ground that the House vote on Public Law 80–772 was taken without a quorum); *United States v. Felipe,* No. 07–CV–061, 2007 WL 2207804, at *2 (E.D.Pa. Jul. 30, 2007) (rejecting argument that there was a *sine die* recess in Congress between the House vote on Public Law 80–772 and its adoption by the Senate in violation of the Constitution). Because there is no factual or legal support for the contention that H.R. 3190 was passed by the House in contravention of the Constitution, or that Public Law 80–772 was otherwise improperly enacted, I conclude that the court has jurisdiction in this criminal case pursuant to § 3231.

**B. THE REDEMPTION/PREPAYMENT THEORY**

Mr. Levy also appears to invoke what is commonly referred to as the "redemption theory" in support of his contention that indictment should be dismissed. The theory, as understood through Mr. Levy's filings and several court opinions discussing (and rejecting) the argument, is based on the idea that each person has a split personality: the real person and the fictional person called a "strawman." The strawman came into existence when the United States went off the gold standard in 1933. At that time, the government pledged the strawman of its citizens as collateral to secure the national debt. Each citizen thus became the secured holder of debt and a creditor of the United States. As a creditor, a citizen is entitled to redeem the debt, funds for which are maintained in a trust account for each citizen in Puerto Rico. The citizen may use the proceeds to pay for private or public debts. Relying on this theory, Mr. Levy concludes that because the government is required to release money from his account upon demand and the indictment merely constitutes a request for the value of the money orders he is charged with creating, the United States Treasury, the alleged trustee of the accounts in Puerto Rico, is required to release the money requested and "settle" the case.

▮ Every court which has considered the "redemption theory" has dismissed it as frivolous. *See, e.g., Ferguson–El v. Virginia,* No. 3:10CV577, 2011 WL 3652327, at *3 (E.D.Va. Aug. 18, 2011); *Tirado v. New Jersey,* No. 10–3408(JAP), 2011 WL 1256624, at *4–5 (D.N.J. Mar. 28, 2011); *Marshall v. Florida,* No. 10–20227, 2010

WL 1248846, at *1 (S.D.Fla. Feb. 1, 2010); *Rasheed v. Comerica Bank*, No. 05–73668, 2005 WL 3592009, at *1 (E.D.Mich. Nov. 2, 2005). As Mr. Levy provides no legal or factual support for the contention that the government is required to pay his debts, I adopt the rationale of the cases cited above, and reject the redemption theory.

### III. CONCLUSION

Mr. Levy's "commercial notices" and motions to dismiss the indictment are DENIED.

Attachment A

LEVY – EXHIBIT-B

## Office of the Clerk
## U.S. House of Representatives
## Washington, DC 20515–6601

September 11, 2006

Thank you for contacting the Office of the Clerk.

After conducting a thorough examination of the journals, I found no entry in the journal of the House of any May 12, 1947 vote on the H.R. 3190 bill, although pages 343–344 of the Journal of the House of Representatives from the 1st Session of the 80th Congress indicates that the bill was amended, purportedly passed, and transmitted to the Senate for concurrence. The Senate took no action on the H.R. 3190 bill prior to the December 19, 1947 sine die adjournment.

Page 5049 of the Congressional Record, 80th Congress, 1st Session indicates 44 Members voting 38 to 6 to amend H.R. 3190 on May 12, 1947. Therefore by counting the total yea and nay vote a quorum was not present.

According to House Rules, when less than a majority of a quorum votes to pass a bill, the journal must show the names of Members present but not voting. I found no record of any names for the May 12, 1947 vote. I hope this information has answered your questions.

Sincerely Yours,

Karen L. Haas

Karen L. Haas
Clerk, U.S. House of Representatives

Attachment B

*LEVY - EXHIBIT - E*

*Appendix A*

### Harley G. Lappin

From: "Harley G. Lappin" <harley.lappin@usdoj.gov>
Sent: Monday, July 27, 2009 3:17 PM

Attention all Department Heads, there has been a large volume of inmate Requests for Administrative Remedies questioning the validity of the Bureau's authority to hold or classify them under 18 U.S.C. §§ 4081, et seq., (1948). On the claim that Public Law 80-772 was never passed or signed in the presence of a Quorum or Majority of both Houses of Congress as required by Article I, § 5, Clause 1 of the Constitution. Although most courts have, thus far, relied on Field v. Clark, 143 U.S. 649(1892) to avoid ruling on the merits of these claims, however, there have been some which have stated that they were not bound by the Field case, but those cases did not involve any Quorum Clause challenge. So out of an abundance of caution, I contacted the Office of Legal Counsel, the National Archives and the Clerk of the House of Representatives to learn that there is no record of any quorum being present during the May 12, 1947 vote on the H.R. 3190 Bill in the House (See 93 Cong.Rec. 5049), and the record is not clear as to whether there was any Senate vote on the H.R. 3190 Bill during any session of the 80th Congress. There is only one Supreme Court case that says in order for any bill to be valid the Journals of both Houses must show that it was passed in the presence of a Quorum. See United States v. Ballin, Joseph & Co., 144 U.S. 1, 3 (1892). The Clerk of the House states that the May 12, 1947 vote was a 'voice vote,' but the Parliamentarian of the House states that a voice vote is only valid when the Journal shows that a quorum is present and that it's unlawful for the Speaker of the House to sign any enrolled bill in the absence of a quorum. On May 12, 1947, a presence of 218 Members in the hall of the House was required to be entered on the Journal in order for the 44 Member 38 to 6 voice vote to be legal. It appears that the 1909 version of the Federal Criminal Code has never been repealed. Therefore, . in essence, our only true authority is derived from the 1948 predecessor to Public Law 80-772. "Although adjudication of the constitutionality of congressional enactments has generally been thought to be beyond the jurisdiction of federal administrative agencies, this rule is not mandatory," according to the Supreme Court in the case of Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 215 (1994). Therefore, the Bureau under the advise of the Legal Counsel feels that it is in the best interest of public safety to continue addressing all of these Administrative Remedy Requests by stating that only the Congress or courts can repeal or declare a federal statute unconstitutional.

Harley G. Lappin
Director, Federal Bureau of Prisons

Attachment C

LEVY - EXHIBIT - A.

JEFF TRANDAHL
CLERK

MARTHA C. MORRISON
DEPUTY CLERK

H–154 THE CAPITOL

## Office of the Clerk
## U.S. House of Representatives
## Washington, DC 20515–6601

June 28, 2000

Mr. Charles R. Degan
Mail Stop 116012076
Building Beale B 313
1101 John Denie Road
Memphis, TN 38184

Dear Mr. Degan:

Thank you for your letter requesting information on Title 18.

In response to your inquiry, Congress was in session on June 1, 3, 4, 7-12 and 14-19, 1948, however, Title 18 was not voted on at this time. As you may know, Title 18 covers 845 pages in the U.S. Code and this wording was developed over many years. Signed copies of laws are archived at the National Archives and Records Administration and are not available to the public.

I hope that I have been of some assistance to you. For future reference, most federal depository libraries possess this type of information. For the depository library closest to you, please consult the Government Printing Office web site: www.gpo.gov/libraries.

With best wishes, I am

Sincerely,

Jeff Trandahl

JT/rs

Attachment D

MANCY ERICKSON
SECRETARY

LEVY-EXHIBIT-C  PAGE  32
SUITE S-312
THE CAPITOL
WASHINGTON, DC 20510-0100
(202) 224-2322

# United States Senate
OFFICE OF THE SECRETARY

March 9, 2009

Mr. Wayne E. Matthews
713 Bonnie Meadow Lane
Ft. Washington, MD 20744

Dear Mr. Matthews:

Thank you for your recent letter requesting confirmation on the status of H.R. 3190 from the 80th Congress.

I asked the Senate Historian's office to review the correspondence you enclosed, and they were able to verify that no action was taken by the Senate on H.R. 3190 prior to the December 19, 1947 *sine die* adjournment. I have enclosed relevant pages from the *House Journal* and *Congressional Record* for your reference.

Sincerely,

Nancy Erickson
Secretary of the Senate

NE:rwp

Enclosures

Attachment E

LEVY- EXHIBIT- D.

LORRAINE C. MILLER
CLERK

DEBORAH M. SPRIGGS
DEPUTY CLERK

ROBERT F. REEVES
DEPUTY CLERK

MARIA A. LOPEZ
DEPUTY CLERK

H-154 THE CAPITOL

# Office of the Clerk
## U.S. House of Representatives
### Washington, DC 20515-6601

August 24, 2010

Thank you for contacting the Office of the Clerk.

Our office has conducted research of the House Journal and the Congressional Record in regards to HR 3190 and the voice vote that was taken on May 12, 1947. After researching these official proceedings of the US House of Representatives we have been unable to find the names of the 44 Members who responded to the voice vote. We have included pages from the House Journal and the Congressional Record that shows the proceedings of that day as far as the quorum is concerned. The text of HR 3190 passed on May 12, 1947 it was debated, engrossed and the motion was laid on the table. HR 3190 was passed by the House and Senate on June 18, 1948 and became Public Law 80-772 on June 25, 1948. The House Convened on December 19, 1947 for daily business the start of a new session of Congress was January 6, 1948. We hope the provided information and documentation will aid in your research.

Legislative Resource Center

Office of the Clerk

US House of Representatives

Attachment F

## AFFIDAVIT OF TONY ROBERT DAVIS
## UNDER THE PENALTY OF PERJURY
## REGARDING NO VOTE ON TITLE 18 IN 1948

**STATE OF TEXAS**      §

**COUNTY OF TRAVIS**     §

### JURAT

My name is Tony Robert Davis. I am over the age of 18 and am fully competent to make this affidavit. I have personal knowledge of the facts stated herein and am fully competent to testify to those facts.

I work for the Derkunt Law Office in Austin, Texas. Our firm has done extensive research and compiled extensive data on the invalidity of Title 18 (Public Law 80-772).

On May 10, 2006 I had conversation with Venise Smith, (202) 226-5200, who works at the House of Representatives Library regarding a letter that was sent from Jeff Trandahl, Clerk of the House to Mr. Charles R. Degan on June 20, 2000.

That letter states that Congress was in session on June 1, 3, 4, 7-12, and 14-19, 1948, and that Title 18 was not voted on at that time. Since Title 18 (Public Law 80-772) only passed the House in 1947 in the First Session of Congress as shown by the Congressional record, and the letter to Mr. Degan by the clerk of the House and the supporting evidence shows that it was not voted on in June of 1948, when it was theoretically passed into law, it is not a law, but a nullity.

On May 11, 2006, Venise Smith called me back and advised me that the House Library had checked the letter, that it was valid, and that all statements made in the letter were valid, including the dates when Congress was in session and the fact that Title 18 was not voted on in June of 1948.

Venise Smith then faxed me a cover page from the House Library and copy of the letter and 17 pages of supporting documents which shows that Public Law 80-772 was never passed into law.

According to the Public Records of Congress, Public Law 80-772 is, therefore, not a law.

I certify that the foregoing is true and correct pursuant to 28 USC § 1746.

/s/ _Tony Robert Davis_
Tony Robert Davis
Derkunt Law Office
Austin, TX

1364

Attachment G

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

**BILLS PASSED OVER**

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 20, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900. (31 Stat. 321), as amended by the act of May 31, 1938 (52 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishment of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2228. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 7159. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

**BILLS OBJECTED TO**

One objection being made to the consideration of the bill (H. R. 1866) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. J. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today, were, by unanimous consent, severally laid on the table.

**COMMITTEE ON ARMED SERVICES**

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

Resolved, That the Committee on Armed Services, acting as a whole or by subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (o) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress at such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena, or otherwise, the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection; and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

**COMMITTEE ON PUBLIC LANDS**

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

Resolved, That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee or any subcommittee thereof is authorized to sit and act during the present Congress at such times and places within or outside the United States whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

**COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE**

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 133):

Resolved, That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable, and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to; was, by unanimous consent, laid on the table.

**ENROLLED BILLS SIGNED**

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

**ENROLLED SENATE JOINT RESOLUTION SIGNED**

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 104. Joint resolution to permit United States common communications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

**LEAVE TO ADDRESS THE HOUSE**

On motion of Mr. BENNETT of Missouri, by unanimous consent,

11204

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## SECOND SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON : : JANUARY 6, 1948

IN THE ONE HUNDRED AND SEVENTY-SECOND YEAR
OF THE INDEPENDENCE OF THE UNITED STATES

Prepared for John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff,
Journal Clerk; Raymond P. Johnson and Thomas Cleary, Assistants

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

ADJOURNMENT RESOLUTION

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 218):

Resolved, That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said concurrent resolution was agreed to was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said concurrent resolution.

AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 219):

Resolved, That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was considered and agreed to was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said concurrent resolution.

AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

REPORTS OF INVESTIGATING COMMITTEES TO BE DOCUMENTS OF THE EIGHTIETH CONGRESS

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

GENERAL LEAVE TO EXTEND REMARKS

On motion of Mr. HALLECK, by unanimous consent, all Members were granted permission, until the last edition authorized by the Joint Committee on Printing is published, to extend and revise their own remarks in the Record on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

CLERK TO RECEIVE MESSAGES

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

REPORTS FROM THE OFFICE OF THE COMPTROLLER GENERAL

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 700):

Resolved, That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (58 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

DESIGNATION OF ACTING CLERK OF THE HOUSE OF REPRESENTATIVES

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 701):

Resolved, That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

The SPEAKER laid before the House the following communication from the Clerk, which was read:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
Washington, D. C., June 20, 1948.

The honorable the SPEAKER,
House of Representatives.

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,

JOHN ANDREWS,
Clerk of the House of Representatives.

EMPIRE PARLIAMENTARY ASSOCIATION

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 261, Eightieth Congress, he had appointed the following Members on the part of the House to attend the meeting of the Empire Parliamentary Association to be held in Bermuda beginning November 15, 1948: Mr. TALLE, of Iowa, chairman; Mr. CORBETT, of Pennsylvania; Mr. KEFAUVER, of Tennessee; Mr. WORLEY, of Texas.

INVESTIGATIONS OF PACIFIC ISLANDS AND AREAS

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 129, Eightieth Congress, he had appointed as members of the joint committee to make a study and investigation of the islands and other areas of the Pacific subject to the authority of the United States the following members of the Committee on Public Lands of the House of Representatives: Mr. CRAWFORD, Mr. LEMKE, Mr. FERNANDEZ.

And the following Members of the Committee on Foreign Affairs of the House of Representatives: Mr. FULTON, Mr. JACKSON of California, Mr. PFEIFER.

FURTHER MESSAGE FROM THE SENATE

A still further message from the Senate, by Mr. Burke, one of its clerks, announced that the Senate had passed without amendment a bill of the House of the following title:

H. R. 5356, An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation.

The message also announced that the Senate agrees to the amendment of the House to the bill (S. 2877) entitled "An act to amend the Reconstruction Finance Corporation Act, as amended," with an amendment, as follows: Strike out, "$35,000,000" and insert in lieu thereof "$40,000,000."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amend-

Attachment H

11203

# JOURNAL OF THE SENATE

OF THE

## UNITED STATES OF AMERICA

———

### SECOND SESSION

OF THE

### EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 6, 1948, IN THE ONE HUNDRED
AND SEVENTY-SECOND YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1948

commodities to meet domestic needs and foreign commitment.

The Senate proceeded to consider the said amendments; and,

On motion by Mr. AIKEN,

Resolved, That the Senate agree thereto.

Ordered, That the Secretary notify the House of Representatives thereof.

### PRODUCTION OF STRATEGIC AND CRITICAL MATERIALS

The Senate resumed the consideration of the bill (S. 2756) to stimulate the production and conservation of strategic and critical ores, metals, and minerals the interest of national defense and for the establishment within the Department of the Interior of a Mine Incentive Payments Division, and for other purposes,

The question being, Shall the bill pass? Pending debate,

### DEVELOPMENT OF CIVIL TRANSPORT AIRCRAFT

On motion by Mr. BREWSTER,

The Senate proceeded to consider the bill (S. 2644) to provide for the development of civil transport aircraft adaptable for auxiliary military service, and for other purposes.

On the question of agreeing to the reported amendment, striking out all after the enacting clause and inserting in lieu thereof other words,

Pending debate,

### ISSUANCE OF STAMP COMMEMORATIVE OF JULIETTE LOW

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 327) to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and no amendment being made,

Ordered, That it pass to a third reading.

The said joint resolution was read the third time.

Resolved, That it pass,

Ordered, That the Secretary notify the House of Representatives thereof.

### ISSUANCE OF STAMP COMMEMORATIVE OF ROUGH RIDERS

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 305) to authorize the issuance o fa special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and no amendment being made,

Ordered, That it pass to a third reading.

The said joint resolution was read the third time.

Resolved, That it pass.

Ordered, That the Secretary notify the House of Representatives thereof.

### EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted as in executive session, by unanimous consent,

### CONSTRUCTION OF RAILROADS IN ALASKA

On motion by Mr. MAGNUSON, and by unanimous consent,

The Senate proceeded to consider the concurrent resolution (S. Con. Res. 59) relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements; and the reported amendments having been agreed to,

The concurrent resolution, as amended, together with the accompanying preamble, was agreed to, as follows:

Whereas the defense of the Territory of Alaska is essential to the national security of the United States; and

Whereas further development of mineral, timber, and other resources of Alaska is necessary to the defense of that Territory and to the welfare and security of the United States; and

Whereas adequate transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are essential to the development of the resources and the defense of Alaska; and

Whereas existing transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are inadequate for the development of the resources and the defense of Alaska: Therefore be it

Resolved by the Senate (the House of Representatives concurring), That the President is requested to commence negotiations with the Canadian Government with a view toward determining the desirability of extending the existing railroad system now terminating at Prince George, British Columbia, Canada, to the Territory of Alaska, and to cause surveys to be made and plans, specifications, and cost estimates be prepared covering the construction of a railroad connecting the existing railroad system terminating at Fairbanks, Alaska, with a railroad system extended from Prince George, British Columbia, Canada, to the Territory of Alaska; also including studies with the Canadian Government for reciprocal tariff and immigration arrangements in connection with this project.

### ADJOURNMENT

On motion by Mr. WHERRY, at 7 o'clock and 14 minutes a. m. (Sunday, June 20, 1948),

The Senate, pursuant to House Concurrent Resolution 218, adjourned.

### ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had been previously signed by the Speaker of the House of Representatives, and examined and found truly enrolled by the Secretary of the Senate:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1266. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1716. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co ,and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizin gthe extension of the functions and duties of Fed-

eral Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2780. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2796. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5982. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6446. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City,

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

**ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED**

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1730. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

UNITED STATES OF AMERICA

# Congressional Record

## PROCEEDINGS AND DEBATES OF THE 80*th* CONGRESS
### FIRST SESSION

## VOLUME 93—PART 4

APRIL 30, 1947, TO MAY 20, 1947
(PAGES 4251 TO 5560)

UNITED STATES GOVERNMENT PRINTING OFFICE, WASHINGTON, 1947

HeinOnline -- 93 Cong. Rec. i 1947

amount each year for the development of farm-to-market roads. The Commissioner of Public Roads, Mr. Thomas H. MacDonald, spoke in favor of the bill. General Fleming, Commissioner of Public Works, favored the bill. No one appeared in opposition to the bill. It was reported unanimously by the Public Works Committee. Three identical bills have been introduced in the other body by three different Senators. The President recommended the passage of such measure in his message to the Congress on January 3 of this year. This bill will not require a single dollar of appropriations from the Federal Treasury.

Mr. CASE of South Dakota. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. CASE of South Dakota. Does the extension apply to the farm-to-market roads as well as to the primary system?

Mr. CUNNINGHAM. It certainly does, as well as the development of the highways in the urban areas.

Mr. CASE of South Dakota. The bill is very much in order for two reasons. One is that the time when the Japanese war expired, creating the resolution which the gentleman has referred to before, came along in the fall, which gave the States a short year the first year.

Mr. CUNNINGHAM. Yes. No States started building highways prior to October of 1946. They lost 4 months to start with. Then, there was a lack of material and shortage of labor and high prices, which caused the program to be held up. The whole program will be retarded and the States will lose some of this appropriation and there will be tremendous waste if this bill is not enacted. Possibly 18 months' grace period is not sufficient, but if it is not sufficient we can bring up another bill later.

Mr. CASE of South Dakota. If I remember correctly prior to this authorization the old Federal-aid authorization gave the States 2 years in which to act.

Mr. CUNNINGHAM. I think the gentleman is right.

Mr. H. CARL ANDERSEN. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. H. CARL ANDERSEN. I wish to state at this time that in my opinion this is very necessary legislation. As a previous member of the Committee on Roads, I would like to compliment the gentleman for bringing this bill up at this time.

Mr. CUNNINGHAM. I thank the gentleman.

Mr. DONDERO. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield to the chairman of the committee.

Mr. DONDERO. I think the gentleman has already covered the ground, but is it not a fact that because of the conditions enumerated by the gentleman, many of the States have been unable to comply with the provisions of this act, which makes this bill mandatory in order to protect the States?

Mr. CUNNINGHAM. That is absolutely true. In addition, there would be tremendous waste, because the highway program would be stopped, and highways partly completed would be left in status

quo until the Congress took some additional action.

Mr. COLE of New York. Mr. Speaker, I withdraw my reservation of objection.

Mr. ANGELL. Mr. Speaker, reserving the right to object, as one of the members of this committee, I had an opportunity to study this bill very carefully. The people in my particular area in the Northwest are very, very much in sympathy with this bill. I think what the chairman has said and what the gentleman from Iowa [Mr. CUNNINGHAM] has said is absolutely true, that this bill is essential for our road-building program.

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill, as follows:

Be it enacted, etc., That paragraph (d) of section 4 of the Federal-Aid Highway Act of 1944, Public Law 521, Seventy-eighth Congress, approved December 20, 1944, is hereby amended by striking out the term "one year" where it appears in said paragraph and inserting in lieu thereof the term "two years."

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

TO CODIFY TITLE 18 OF THE UNITED STATES CODE, CRIMES AND CRIMINAL PROCEDURE

The Clerk called the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill the second time.

Mr. WALTER. Mr. Speaker, I offer an amendment.

The Clerk read as follows:

Amendment offered by Mr. WALTER: On page 454, line 11, after the word "of", strike out "three" and insert "five."

Mr. WALTER. Mr. Speaker, the amendment you have just heard reported would have the effect, if adopted, of increasing the membership of the parole board from three to five.

At the last session of the Congress one of the subcommittees of the Committee on the Judiciary, in studying the legislation which we hoped might have the effect of cutting down the criminal rate in this country, found a perfectly appalling situation in the parole board. That board of three members actually interviews upward of 10,000 prisoners each year. That is, personal interviews. In addition to that, they have to review the cases acted on after personal interviews.

There are 21 criminal institutions in the United States that must be visited by this Board at regular intervals. So they have a perfectly impossible job with the result that men are paroled according to formula who should be compelled to serve their full sentence. I am not thinking about those men who are eligible for parole and in whose cases no action can be taken because the Board has not the time to reach their cases;

that is bad enough, but, significantly enough, over 50 percent of the criminals in the Federal institutions are repeaters. It seems to me that the least we can do is to make it possible or probable for a Board intelligently to pass on applications for parole in order to determine whether or not men should be released from their incarceration.

Mr. CARROLL. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. CARROLL. Would the gentleman's amendment change existing law?

Mr. WALTER. It does not change existing law at all.

Mr. COLE of New York. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. COLE of New York. If it does not change existing law, and this bill is designed to codify existing law, what is the necessity of offering the amendment?

Mr. WALTER. It changes existing law in that it changes the number of members on the Board. It does not, however, in any way affect the purpose of the law establishing the parole system; it merely changes the number of members of the Board. This is not different from what has been done by this committee in this very bill. The period of sentence has been changed in order to make different crimes fit the sentences that have been fixed by Congress from time to time. That is done throughout this entire title 28.

Mr. GRAHAM. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. GRAHAM. As I understand the gentleman's amendment it increases the number of members from three to five.

Mr. WALTER. That is right.

Mr. GRAHAM. But it does not increase the rate of compensation of the members.

Mr. WALTER. That is right, exactly.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. ROBSION. I may say this to the gentleman, this matter came up before our Judiciary Committee and former Senator George Wharton Pepper, who is tremendously interested in this subject, and others felt they had to have additional authorization to increase the number from three to five. Otherwise we are not amending the law. I think there is no objection to it. We have a bill which can be called up to do this thing.

Mr. WALTER. The gentleman is correct, but we are this far. I do not think there is any doubt but that the Judiciary Committee would unanimously approve a separate bill, but we have gotten this far with this legislation and it certainly seems to me the situation is so critical that we ought to act as quickly as we possibly can. That is the reason I have offered this amendment at this time.

The SPEAKER. The time of the gentleman from Pennsylvania has expired.

Mr. ROBSION. Mr. Speaker, this bill differs from the five codification bills which have preceded it on this calendar in that it constitutes a revision, as well as a codification, of the Federal laws

## 1372

Attachment I

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two lawpublishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.

XCIII——319

This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that

they were purely a codification. But there are some changes in this bill (H. R. 3193). I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

#### EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

HeinOnline -- 93 Cong. Rec. 5049 1947

11113

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
## OF THE UNITED STATES

### EIGHTIETH CONGRESS
### FIRST SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON  :  :  JANUARY 3, 1947

IN THE ONE HUNDRED AND SEVENTY-FIRST YEAR
OF THE INDEPENDENCE OF THE UNITED STATES

Prepared under the direction of
John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff, Journal Clerk
and Raymond P. Johnson, and Thomas H. Cleary, Assistant Journal Clerks

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

advertising by means of radio, to the Committee on Interstate and Foreign Commerce.

454. By the SPEAKER: Petition of Los Angeles Irish Society, petitioning consideration of their resolution with reference to furtherance of the principles of self-government and self-determination consistent with the welfare of the people; to the Committee on Foreign Affairs.

455. Also, petition of members of Townsend Club No. 1, of Boston, Mass., petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16, to the Committee on Ways and Means.

456. Also, petition of the delegates from the Townsend Clubs of the Third Congressional District of the State of Florida, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16, to the Committee on Ways and Means.

457. Also, petition of membership of the Crescent City Townsend Club, No. 1, of Florida, petitioning consideration of their resolution with reference to request for enactment of a uniform national insurance program; to the Committee on Ways and Means.

458. Also, petition of members of the Jacksonville Townsend Club, No. 1, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16, to the Committee on Ways and Means.

## MONDAY, MAY 12, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Friday, May 9, 1947, was read and approved.

### COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

671. A letter from the Secretary of War, transmitting a draft of a proposed bill to validate payments heretofore made by disbursing officers of the United States Government covering the cost of shipment of household effects of civilian employees; and for other purposes; to the Committee on the Judiciary.

672. A letter from the Secretary of Commerce, transmitting a draft of a proposed bill to provide for the appointment of one additional Assistant Secretary of Commerce, and for other purposes; to the Committee on Interstate and Foreign Commerce.

673. A letter from the Director, Office of Selective Service Records, transmitting a list of its selective-service registrants of inductible age occupationally deferred by the local boards of the Selective Service System as of March 31, 1947, because of their employment in or under the Federal Government; to the Committee on Armed Services.

674. A letter from the Acting Secretary of the Treasury, transmitting a draft of a proposed bill to integrate certain personnel of the former Bureau of Marine Inspection and Navigation and the Bureau of Customs into the Regular Coast Guard, to establish the permanent commissioned personnel strength of the Coast Guard; and for other purposes; to the Committee on Merchant Marine and Fisheries.

### MESSAGE FROM THE SENATE

A message from the Senate by Mr. Carrell, one of its clerks, announced that the Senate disagrees to the amendment of the House to the bill (S. 938) entitled "An act to provide for assistance to Greece and Turkey," requests a conference with the House on the disagreeing votes of the two Houses thereon; and appoints Mr. VANDENBERG, Mr. CAPPER, Mr. WILEY, Mr. CONNALLY, and Mr. GEORGE to be the conferees on the part of the Senate.

The message also announced that the President had informed the House that on May 8, 1947, he approved and signed a bill of the following title:

S. 691: An act to amend the act of January 5, 1905, to incorporate the American National Red Cross.

### LABOR, FEDERAL SECURITY AGENCY, AND RELATED INDEPENDENT AGENCIES APPROPRIATION BILL

On motion of Mr. KEEFE, by unanimous consent, the bill (H. R. 2700) making appropriations for the Department of Labor, the Federal Security Agency, and related independent agencies for the fiscal year ending June 30, 1948, and for other purposes, with amendments of the Senate thereto, was taken from the Speaker's table.

When, on motion of Mr. KEEFE,

Resolved, That the House disagree to the amendments of the Senate and agree to a conference asked by the Senate on the disagreeing votes of the two Houses thereon.

Thereupon the Speaker announced the appointment of Messrs. KEEFE, H. CARL ANDERSEN, GEORGE SCHWABE, CHURCH, ROONEY, HENDRICKS, and FOGARTY managers on the part of the House at said conference.

Ordered, That the Clerk notify the Senate thereof.

### COMMITTEES GRANTED LEAVE TO SIT

By unanimous consent, committees were granted leave to sit during general debate in the House as follows:

Subcommittee on Public Buildings and Grounds of the Committee on Public Works, for tomorrow;

Committee on Banking and Currency, for today; and

Committee on the Judiciary and its subcommittees, for remainder of week.

### CALL OF THE HOUSE

Mr. HOFFMAN made the point of order that a quorum was not present.

A quorum not being present,

On motion of Mr. HALLECK, a call of the House was ordered.

The doors were closed.

The roll was called.

When the following-named Members failed to answer:

[Roll No. 53]

Allen, Calif.　Gallagher　Muhlenberg
Barden　Gamble　Nodar
Bates, Ky.　Gearhart　Norblad
Beall　Gifford　Norrell
Bell　Gore　Norton
Bender　Granger　O'Hara
Blatnik　Grant, Ind.　Owens
Bloom　Gregory　Pace
Bolton　Hall　Pfeifer
Bradley, Mich.　Leonard W.　Philbin
Brophy　Hand　Plumley
Buckley　Hardy　Potts
Buffett　Hart　Powell
Bulwinkle　Hartley　Rabin
Butler　Hesterman　Redden
Byrne, N. Y.　Hinshaw　Richelman
Canfield　Javits　Rivers
Celler　Johnson, Calif.　Rodney
Chapman　Jones, N. C.　St. George
Clements　Jones, Wash.　Schwabe, Mo.
Clippinger　Kearns　Scoblick
Cole, Kans.　Keefe　Scott, Hardie
Coudert　Kelley　Scott
Cravens　Keogh　Hugh D., Jr.
Crow　Kerr　Sealy-Brown
Dague　Keresten, Wis.　Sharp
D'Alesandro　Kilburn　Simpson, Pa.
Davis, Ga.　King　Smith, Kans.
Davis, Tenn.　Klein　Snyder
Dawson, Ill.　Kunkel　Somers
Delaney　Lane　Stanley
Doughton　Latham　Stockman
Douglas　Lea　Stratton
Devery　LeFevre　Sundstrom
Eaton　Lemke　Taylor
Ellis　McConnell　Thomas, N. J.
Enslener　McDowell　Vinson
Fallon　McGarvey　Verys
Fellows　Macy　Welchel
Fernandez　Maloney　West
Fisher　Mansfield, Tex.　Wolverton
Fuller　Marcantonio　Zimmerman
Fulton　Miller, Nebr.
　　Mitchell

Thereupon the Speaker announced that 297 Members had answered to their names, a quorum.

By unanimous consent, further proceedings under the call were dispensed with.

The doors were opened.

### CORRECTION OF ROLL CALL

On motion of Mr. REED of New York, by unanimous consent,

Ordered, That roll call No. 54 be corrected to show him voting in the negative.

### CONSENT CALENDAR

Pursuant to a special order agreed to on May 9, 1947, and to clause 3, rule XIII,

The SPEAKER directed the Consent Calendar to be called,

When,

### BILLS PASSED

The Committee of the Whole House on the State of the Union was discharged from further consideration of bills of the following titles severally, when said bills were severally considered, read twice, ordered to be engrossed and read a third time, were severally read a third time by title, and passed:

H. R. 299. A bill to further perfect the consolidation of the Lighthouse Service with the Coast Guard.

H. R. 1179. A bill to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947.

H. R. 1412. A bill to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938.

H. R. 1566. A bill to codify and enact into positive law, title 4 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States."

H. R. 1567. A bill to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds."

H. R. 1874. A bill to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes.

H. R. 2054. A bill to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service.

H. R. 2064. A bill to codify and enact into positive law, title 9 of the United States Code, entitled "Arbitration."

H. R. 2351. A bill to amend section 20a of the Interstate Commerce Act.

H. R. 2366. A bill to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes.

H. R. 2573. A bill to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis.

H. R. 2654. A bill to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.

H. R. 3029. A bill to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia.

Ordered, That the Clerk request the concurrence of the Senate in said bills severally.

The Committee of the Whole House on the State of the Union was discharged from further consideration of bills of the following titles severally, when said bills were severally considered and read twice, the amendments following each were severally agreed to, and the bills, as amended, were severally ordered to be engrossed and read a third time, were severally read a third time by title, and passed:

H. R. 84. A bill to amend the Nationality Act of 1940, as amended.

Page 2, line 2, after "following", insert sentence at the end of paragraph 1.

H. R. 1203. A bill to provide compensation to persons performing the duties of postmasters at post offices of fourth class during annual and sick leave of the postmasters.

Page 1, line 9, after "leave", strike out the remainder of line 9 and all of line 10 and insert or leave without pay.

H. R. 1237. A bill to regulate the marketing of economic poisons and devices, and for other purposes.

Page 2, line 8, strike out "or weeds".

Page 6, line 10, strike out "instructions" and insert directions.

Page 6, line 24, strike out the semicolon and insert: Provided, That the Secretary may permit the ingredient statement to appear prominently on some other part of the container, if the size or form of the container makes it impracticable to place it on the part of the retail package which is presented or displayed under customary conditions of purchase.

Page 8, line 5, insert, after "offer to deliver", in the original unbroken package.

Page 9, line 16, strike out "a".

Page 14, after line 9, insert:

e. The Secretary is authorized to cancel the registration of any economic poison at the end of a period of five years following the registration of such economic poison or at the end of any five-year period thereafter, unless the registrant, prior to the expiration of each such five-year period, requests in accordance with regulations issued by the Secretary that such registration be continued in effect.

Page 15, line 16, after "Act", insert and the determination and establishment of suitable names to be used in the ingredient statement.

Page 16, line 24, strike out "of" and insert or.

Page 16, line 25, after "$1,000", insert or imprisoned for not more than one year, or both such fine and imprisonment.

Page 24, line 2, after "official", insert agricultural or other.

H. R. 1282. A bill to permit certain naval personnel to count all active service rendered under temporary appointments as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officers in the United States Navy or the United States Marine Corps, respectively.

Page 1, line 6, after "a", insert permanent or.

Page 2, line 6, after "which the", insert permanent or.

H. R. 1371. A bill to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes.

Page 2, line 14, after "grade", strike out remainder of line and all of lines 15, 16, and 17.

H. R. 1566. A bill to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions."

Page 10, following line 3, strike out "Committee on Revision of the Laws" wherever it appears and insert Committee on the Judiciary.

Page 11, line 10, strike out "Revision of the Laws" and insert the Judiciary.

Page 12, line 7, strike out "Revision of the Laws" and insert the Judiciary.

Page 13, line 9, strike out "Revision of the Laws" and insert the Judiciary.

Page 15, line 16, strike out "Revision of the Laws" and insert the Judiciary.

Page 16, lines 1 and 2, strike out "Revision of Laws" and insert the Judiciary.

Page 16, line 5, after "resolutions", insert relating to the revision of the laws.

Page 16, line 7, strike out "Revision of the Laws" and insert the Judiciary.

Page 16, line 17, strike out "Revision of Laws" and insert the Judiciary.

Page 16, line 22, strike out "Revision of Laws" and insert the Judiciary.

Page 17, lines 1 and 2, strike out "Revision of the Laws" and insert the Judiciary.

Page 17, line 6, strike out "Revision of the Laws" and insert the Judiciary.

Page 18, lines 23 and 24, strike out "Revision of the Laws" and insert the Judiciary.

H. R. 2151. A bill relating to institutional on-farm training for veterans.

Page 3, line 8, strike out "the noninstitutional".

Page 3, line 25, strike out "institutional" and insert group instruction.

Page 4, line 6, strike out "the noninstitutional".

Page 4, line 17, strike out "institutional" and insert group instruction.

Page 5, line 3, strike out "paragraph" and insert Act.

Page 5, line 7, after "of the", insert first.

H. R. 2237. A bill to correct an error in section 342 (b) (4) of the Nationality Act of 1940, as amended.

Page 1, line 5, strike out all after "amended", and insert to read as follows:

(4) Reasonable fees, with the approval of the Attorney General, in case where such fees have not been established by law, to cover the cost of furnishing copies, whether certified or uncertified, of any part of the records or information from the records of the Service. Such fees shall not exceed a maximum of 15 cents per folio, with a minimum fee of 50 cents for any one such service, in addition to a fee of $1 for any official certification furnished under seal. No such fee shall be required from officers or agencies of this

United States or of any State or any subdivision thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.

H. R. 2233. A bill to authorize the patenting of certain public lands to the State of Montana, or to the Board of County Commissioners of Hill County, Mont., for public-park purposes.

Page 3, lines 12 and 13, strike out " (1) that the lands shall be used for park and recreational purposes. (2)".

Page 2, line 11, strike out all following "provide", and all of line 12 before "that".

Page 3, line 2, after "Interior", strike out the semicolon, insert a period and strike out balance of bill.

Ordered, That the Clerk request the concurrence of the Senate in said bills, severally.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill of the Senate (S. 54) granting the consent of Congress for the construction of a dam across Dan River in North Carolina, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1465) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes.

When said bill was read by title.

On motion of Mr. Tarver, by unanimous consent, the Committee on the Judiciary was discharged from further consideration of the bill of the Senate (S. 152) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1465, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. Tarver, by unanimous consent, the bill of the Senate (S. 278) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for

other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2234) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. Tarver, by unanimous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2234, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. Tarver, by unanimous consent, the bill of the Senate (S. 534) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. Tarver, by unanimous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged

from further consideration of the bill (H. R. 1487) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the following amendments, which were agreed to:

Page 1, line 4, after "follows:", insert Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven.".

Page 1, line 4, strike out "Renumber" and insert renumber.

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recommended by the Committee on the Judiciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert June 18.

Page 34, line 9, strike out comma after "Puerto Rico" and "and the courts of first instance of the Philippine Islands".

Page 34, line 10, strike out "bill in equity" and insert complaint.

Page 39, line 22, strike out "March 2, 1913" and insert July 1, 1909.

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the catalogs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 452, line 11, after "of", strike out "three" and insert five.